[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14359
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00464-RH-CAS

NATAN TORRES,
a.k.a. Todrick Roberts,

Plaintiff - Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 11, 2018)

Before WILLIAM PRYOR, FAY, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Natan Torres, a Florida prisoner, filed a *pro se* lawsuit against Defendant Florida Department of Corrections that was removed to the United States District Court for the Northern District of Florida.  Styled as a Motion for Declaratory Judgment, the complaint alleges that Defendant violated Plaintiff's constitutional rights by confiscating Uniform Commercial Code ("UCC") materials.  The district court granted Defendant's motion for summary judgment and denied Plaintiff's cross motion for summary judgment.  Because Plaintiff has not established that Defendant's confiscation of his materials violated his constitutional rights, we affirm.

## I.    BACKGROUND

### A.    Factual Background

Florida law requires Defendant to "protect the public through the incarceration and supervision of offenders."  Fla. Stat. § 20.315(1).  Defendant employs officers to oversee its inmates.  Those officers enforce rules to ensure prison security and public safety.  Some rules prohibit the possession of contraband.  One such rule, Florida Administrative Code Rule 33-602.203(7), which the parties call the "UCC Contraband Rule," prohibits the possession of "any forms that may be used in the fraudulent filing of Uniform Commercial Code liens and/or publications that promote this practice."

Defendant promulgated the UCC Contraband Rule to curtail fraudulent activity, particularly by sovereign citizens.  As explained by Carter Hickman, a Correctional Services Consultant for Defendant, "[t]he U.S. Department of Justice defines sovereign citizens as a domestic terrorist movement comprised of a network of loosely affiliated individuals who hold extremist beliefs that federal, state, and local governments are operating illegitimately."  "Sovereign citizens often engage in many fraudulent financial schemes, often targeting government officials with various tactics used to harass, intimidate, and psychologically threaten them . . . includ[ing] creating fraudulent liens representing a fabricated debt supposedly owed by the government official to the sovereign citizen."

On January 3, 2013, Defendant's officers found UCC paperwork in Plaintiff's locker while he was incarcerated at Century Correctional Institution in Century, Florida.  Officers determined the paperwork to be UCC contraband. Officer K. Bedsole seized the contraband and issued a Disciplinary Report against Plaintiff for possession of contraband.  Plaintiff was "charged with a violation of F.A.C. Chapter 33-601.314, Rules of Prohibited Conduct, 3-12, Possession of any Other Contraband."  Plaintiff pled guilty to the charge and served 15 days of disciplinary confinement, but did not lose any gain time.

### B.    Procedural History

In 2015 Plaintiff filed a Motion for Declaratory Judgment in the Second Judicial Circuit in and for Leon County, Florida, challenging the UCC Contraband Rule and its application to him.  Plaintiff's complaint alleges that:  (1) the "UCC Contraband Rule as adopted by [Defendant] . . . infringes inmates state and federal constitutional and statutory due process of law rights to 'legitimately' possess, study, and practice UCC private administrative remedies and processes . . ."; (2) the UCC Contraband Rule is constitutionally invalid due to being void for vagueness; (3) Defendant improperly promulgated the UCC Contraband Rule; and (4) Defendant arbitrarily applied the UCC Contraband Rule to him.

On September 25, 2015, Defendant filed a Notice of Removal, and removed Plaintiff's case to the United States District Court for the Northern District of Florida.  The parties cross moved for summary judgment.  On August 16, 2017, the Magistrate Judge issued a report and recommendation, recommending that Plaintiff's Motion for Summary Judgment be denied, Defendant's Motion for Summary Judgment be granted in part and denied in part.  Plaintiff filed objections to the report and recommendation.  On September 11, 2017, the district court issued an order adopting the report and recommendation over Plaintiff's objections.

On September 13, 2017, the district court entered judgment in favor of Defendant and dismissed Plaintiff's claims on the merits. Plaintiff timely filed a Notice of Appeal.

## II.    DISCUSSION

### A.    Standard of Review

We review de novo the district court's grant of summary judgment, drawing "all reasonable inferences in the light most favorable to" Plaintiff. *See Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018). Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (internal quotation marks omitted). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Summary judgment is appropriate only if a case is "so one-sided that one party must prevail as a matter of law." *See id.* at 251–52.

### B.    First Amendment Claim

Plaintiff contends that the UCC Contraband Rule deprives him of legitimate reading material in violation of the First Amendment. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Prison Legal News v. Sec'y, Fla.  Dep't of Corr.*, 890 F.3d 954, 964 (11th Cir. 2018) (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)). Inmates retain some

5

constitutional rights in prison. *Id.* For instance, inmates like Plaintiff have a First Amendment right to send and receive mail and to receive and possess publications. *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989). "But that right is limited." *Prison Legal News*, 890 F.3d at 965 (citing *Lawson v. Singletary*, 85 F.3d 502, 509 (11th Cir. 1996) (noting the "more limited nature of . . . First Amendment rights" in the penal context)). Plaintiff bears the burden to disprove the validity of the UCC Contraband Rule. *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003).

"[T]he *Turner* Court held that a prison regulation affecting constitutional rights is valid as long as 'it is reasonably related to legitimate penological interests.'" *Prison Legal News*, 890 F.3d at 965 (quoting *Turner*, 482 U.S. at 85, 89). "[U]nder *Turner* we owe 'wide-ranging' and 'substantial' deference to the decisions of prison administrators because of the 'complexity of prison management, the fact that responsibility therefor is necessarily vested in prison officials, and the fact that courts are ill-equipped to deal with such problems.'" *Id.* (quoting *Al-Amin v. Smith*, 511 F.3d 1317, 1328 (11th Cir. 2008) (quotation marks omitted)). The *Turner* Court established four factors to determine the reasonableness of prison regulations: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the

6

asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "[Plaintiff] can point to . . . alternative[s] that fully accommodate[ ] [his] rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 89–91.

We conclude that the UCC Contraband Rule satisfies all four of the *Turner* factors. The UCC Contraband Rule states:

> No inmate shall manufacture or possess any forms that may be used in the fraudulent filing of Uniform Commercial Code liens and/or publications that promote this practice. An inmate shall not possess any Uniform Commercial Code (UCC) Article 9 form, including but not limited to any financing statement (UCC1, UCC1Ad, UCC1AP, UCC3, UCC3Ad, UCC3AP), or correction statement (UCC5), whether printed, copied, typed or hand written, or any document concerning a scheme involving an inmate's "strawman," "House Joint Resolution 192 of 1933," the "Redemptive Process," "Acceptance for Value" presentments or document indicating copyright or attempted copyright of an inmate's name absent prior written authorization from the warden.

Fla. Admin. Code R. 33-602.203(7).

With respect to the first *Turner* factor, the UCC Contraband Rule furthers the legitimate government interest of preventing prisoners from filing fraudulent liens under the UCC. *See Monroe v. Beard,* 536 F.3d 198, 208 (3d Cir. 2008) (acknowledging rational nexus between Pennsylvania prison regulation providing for the confiscation of UCC-related materials, publications, and information on copyrighting names and Department of Corrections' penological interest in preventing criminal activity like the filing of fraudulent liens within the DOC).

Defendant has a legitimate interest in preventing and reducing criminal activity among its inmates. *See Turner*, 482 U.S. at 91; *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Hickman testified that "[t]he Rule specifically addresses and describes documents and terms known to be associated with sovereign citizens which are often the basis of illegal or illicit sovereign activities." That alone is more than sufficient to demonstrate a rational nexus between the Rule and a legitimate government interest.[1] *See Prison Legal News*, 890 F.3d at 968 (noting that actual evidence of illicit activity is not required to satisfy the first *Turner* factor). The first factor favors Defendant.

Under the second *Turner* factor, numerous other means exist for Plaintiff to exercise his First Amendment rights. The UCC Contraband Rule narrowly targets materials relied upon by sovereign citizens to file fraudulent liens and frivolous documents with the courts. Plaintiff still has available to him a wide range of legal materials and publications that do not pertain to the filing of fraudulent liens. *See Monroe,* 536 F.3d at 208–09. Those materials include, for instance, general legal materials or case law concerning the UCC that do not implicate the specific

---

[1] We note that "[t]he abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented." *Jones v. Caruso,* 569 F.3d 258, 270 (6th Cir. 2009) (quoting *Lewis v. Caruso*, No. 1:08-CV-28, 2008 WL 4283652, at *4 (W.D. Mich. Sept. 10, 2008) (collecting cases)); *see also Granda v. Middlebrooks*, No. 5:10-CV-551-OC-29SPC, 2013 WL 1104645, at *5 (M.D. Fla. Mar. 18, 2013).

categories of fraudulent activity identified in the UCC Contraband Rule. *See Prison Legal News*, 890 F.3d at 973 (noting that "adequate alternatives" can exist even when prisoners are cut off from unique activities). Moreover, the Rule provides a mechanism for requesting an exception to the Rule from the warden. Fla. Admin. Code R. 33-602.203(7). The second factor does not disfavor Defendant.

Next, we apply the third *Turner* factor and evaluate the impact of accommodating the Plaintiff's asserted right to possess the contraband on guards, other inmates, and the allocation of prisoner resources generally. Defendant argues, and we agree, that accommodating a right to possess the materials prohibited by the UCC Contraband Rule likely would have a negative impact, particularly on guards, prison administrators, and other government officials that are often the target of fraudulent UCC filings. Invalidating the UCC Contraband Rule could lead to financial harm to those individuals and cause a needless expenditure of Defendant's resources to detect, prevent, and deal with fraudulent filings. *See Prison Legal News*, 890 F.3d at 973; *Monroe,* 536 F.3d at 209. The third *Turner* factor favors Defendant.

Finally, as to the fourth *Turner* factor, Plaintiff has failed to point to an alternative to the UCC Contraband Rule that fully accommodates his interests at *de minimis* cost to valid penological interests. The UCC Contraband Rule is not an

9

"exaggerated response to prison concerns." *Prison Legal News*, 890 F.3d at 974.

As noted, the UCC Contraband Rule narrowly targets materials often used by

inmates to harass and threaten others with fraudulent UCC filings. Plaintiff

suggests that possession of the prohibited materials should be permitted for

legitimate uses. But forcing prison officials to wait for discovery of criminal

activity would impose more than a "de minimis" cost to Defendant's interest in

preventing criminal activity.[2] *See id.* at 975 (the Constitution does not require

Defendant to engage in the fantasy that criminals will follow the rules and abstain

from restricted activities when given access to prohibited materials); *Monroe*, 536

F.3d at 209. Further, the UCC Contraband Rule addresses Plaintiff's concern of

legitimate UCC activity by permitting inmates to demonstrate a valid need for the

prohibited materials and obtain authorization from the warden to possess them.

This final factor favors Defendant.

---

[2]  Although Florida Administrative Code Rule 33-501.401(3)(f) provides authority for Defendant to reject inmate receipt of a publication that "encourages or instructs in the commission of criminal activity," the UCC Contraband Rule is not limited to publications and specifically restricts the manufacture and possession of certain UCC materials. This is not a case like *Jones* where the Sixth Circuit held that the district court did not abuse its discretion in granting a preliminary injunction where the record showed that the challenged rule was overinclusive and other effective rules had been implemented to allow prisoners to receive legitimate UCC-related materials while still limiting fraudulent filings. 569 F.3d at 272–75. Unlike in *Jones*, Plaintiff did not demonstrate that other less burdensome rules exist to address Defendant's penological interests. To the contrary, Plaintiff acknowledges that the UCC Contraband Rule deprived him of material he "was authorized and approved to receive by mail" via rule 33-501.401. And the UCC Contraband Rule, which forbids inmates from manufacturing or possessing "any forms that may be used in the fraudulent filing of Uniform Commercial Code liens and/or publications that promote this practice," is narrower than the rule in *Jones* which prohibited "[m]ail regarding actions that can be taken under the [UCC] which could be used to harass or threaten another individual." Fla. Admin. Code R. 33-602.203(7); *Jones*, 569 F.3d at 274 n.3.

10

The record shows that a "reasonable relationship" does exist between the UCC Contraband Rule and Defendant's prison security and public safety interests. *Turner*, 482 U.S. at 91. Because all four *Turner* factors favor Defendant, we hold that the UCC Contraband Rule does not violate the First Amendment.

## C.    Void for Vagueness

Plaintiff maintains that the UCC Contraband Rule is "vague as applied" and that Defendant arbitrarily deprived him of his property. The UCC Contraband Rule is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

The UCC Contraband Rule fairly describes the specific UCC materials prohibited and is not vague. The Rule provides that inmates may not "manufacture or possess" forms "that may be used in the fraudulent filing of Uniform Commercial Code liens and/or publications that promote this practice." Fla. Admin. Code R. 33-602.203(7). The Rule further specifies names of prohibited forms (i.e., any UCC Article 9 form, including but not limited to any financing statement (UCC1, UCC1Ad, UCC1AP, UCC3, UCC3Ad, UCC3AP), or correction statement (UCC5)) and identifies the specific schemes that promote the practice of filing fraudulent liens (e.g., documents concerning an inmate's "strawman,"

11

"House Joint Resolution 192 of 1933," the "Redemptive Process," "Acceptance for Value" presentments or documents indicating copyright or attempted copyright of an inmate's name). *Id.* Plaintiff failed to establish that the UCC Contraband Rule is so vague as to allow Defendant unbridled discretion to impermissibly ban legitimate materials.

Plaintiff alleges discriminatory enforcement in that Defendant confiscated his UCC materials when the UCC Contraband Rule prohibits only paperwork related to establishing a copyright in an inmate's name. But the Rule is not so limited. The Rule articulates the nature of the prohibited materials and makes clear that documents concerning copyright of an inmate's name are but one of several categories of documents banned.[3] Other than his assertion that his UCC materials did not concern copyright of names under his unpersuasive construction of the Rule, Plaintiff offers no evidence demonstrating that Defendant selectively applied the Rule to him. Plaintiff likewise did not introduce any evidence that Defendant failed to apply the Rule in a uniform fashion. In short, nothing in the record supports Plaintiff's allegation that the confiscation of his UCC materials was

---

[3] Plaintiff asserts that the district court failed to consider an August 26, 2014, memo to wardens that he claims establishes that the UCC Contraband Rule is limited to paperwork related to establishing a copyright in an inmate's name. That memo references the specific materials identified in the UCC Contraband Rule and, like the Rule itself, identifies documents where an inmate indicates a copyright or attempted copyright in his name as merely one of several kinds of prohibited UCC related documents.

arbitrary, much less "clearly the result of capricious interference (personal prejudice)."

Plaintiff's reliance on the holding in *Farid v. Ellen*, 593 F.3d 233, 242 (2d Cir. 2010) is also misplaced.  In *Farid*, the Second Circuit found a prison rule vague as applied because it improperly required the inmate "to engage in some kind of interpretive construction, combining [an inmate committee's] by-laws with the prison rules in order to determine whether materials that violate the former might at the will of prison officials be read to constitute contraband under the latter."  *Farid*, 593 F.3d at 242.  That is not the case here.  The UCC Contraband Rule expressly and clearly describes the banned materials in a single rule.[4]

### D.    Due Process

Plaintiff asserts that he pled guilty under "duress" and with "inadequate notice" of the UCC Contraband Rule and that, consequently, enforcement of the Rule against him violated his procedural due process rights.  We find that Plaintiff failed to raise any genuine issues of material fact supporting these allegations.[5]

---

[4]  Plaintiff's reliance on *Jones* in his complaint and elsewhere for the proposition that the UCC Contraband Rule has "generally already been deemed constitutionally invalid due to being void for vagueness and its arbitrary application" is similarly misplaced.  The *Jones* court held that the plaintiff "clearly understood that [the contraband rule at issue] prohibited the UCC-related materials he possessed" and, therefore, he had no standing to raise a vagueness claim on behalf of other prisoners.  *Jones,* 569 F.3d at 277.

[5]  Defendant argues that Plaintiff's attempted challenge of his disciplinary conviction as an unlawful deprivation of property are improper and should not be considered because they were raised for the first time on summary judgment.  Although plaintiffs cannot raise new claims at the summary judgment stage, *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15

"With any procedural due process challenge, we must first determine whether the injury claimed by the plaintiff is within the scope of the Due Process Clause." *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999). Here, Plaintiff did not lose any gain time as a result of the disciplinary action and has not established the loss of a protected liberty interest. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nor does Plaintiff have a protected property interest in materials properly deemed contraband. *See Baker v. Piggott*, 833 F.2d 1539, 1540 (11th Cir. 1987) (affirming dismissal of due process claim where officer confiscated cash money deemed "contraband" under prison rules).

Plaintiff pled guilty to possession of contraband after declining staff assistance during the investigation, foregoing a disciplinary hearing. The record does not contain any evidence supporting Plaintiff's contention that he pled guilty under "duress as Plaintiff did not understand the charge." As noted, the UCC Contraband Rule clearly specifies the items deemed contraband and Plaintiff's

---

(11th Cir. 2004), we liberally construe *pro se* pleadings, *Ponton v. Sec'y, Fla. Dep't of Corr.*, 891 F.3d 950 n.3 (11th Cir. 2018). Here Plaintiff alleged that the "UCC Contraband Rule as adopted by [Defendant] . . . infringes inmates state and federal constitutional and statutory due process of law rights to 'legitimately' possess, study, and practice UCC private administrative remedies and processes . . ." Plaintiff also challenged the Rule due to Defendant "[p]romulgating [the] rule in special procedures to circumvent the mandatory rule adoption procedures—which is an invalid exercise of delegated legislative authority." Plaintiff further alleges that Defendant "unwarrantedly administered upon and against Plaintiff the following . . . Confiscated and permanently deprived Plaintiff of property due to 'mere legal possession' of UCC study materials absent any fraudulent practices . . ." Liberally construed, Plaintiff's complaint raises procedural due process issues concerning his disciplinary conviction.

14

later construction of the Rule to prohibit only copyright materials is unfounded. The record also demonstrates that, contrary to Plaintiff's contention, Defendant posted the Rule for comment from September 30, 2011, until October 21, 2011, more than a year before applying it to Plaintiff.

Plaintiff also has not introduced any evidence that his confiscated materials are not contraband as defined by the properly interpreted UCC Contraband Rule that includes all the items listed, not just those pertaining to a copyright in a name. The record does not clearly establish the precise nature of the materials Defendant confiscated from Plaintiff. Plaintiff, however, argued he was entitled to receive material from "sovereign" agencies and he attached to his complaint as Exhibit 21 a document entitled "Information Packet and Introduction to the I.S.A. International Sovereigns Association" published "by and Through The American's Bulletin." Hickman testified that the *American's Bulletin* is a monthly newspaper published by Robert Kelly, a long-time leader of the sovereign citizen movement. Hickman explained that "according to a 2010 special report from the Anti-Defamation League, the *American's Bulletin* acts as the 'New York Times of the sovereign citizen movement,' as many new sovereign citizen theories are first printed there." Another document Plaintiff submitted with his complaint as Exhibit 11 and entitled "Complete Administrative Services" addresses commercial administrative remedies and states that, for an $850 donation, the donor can obtain

15

"everything you need to be Secured," including forms deemed contraband (e.g., copyright notice and claim of lien).  Those materials implicate the UCC Contraband Rule.  Plaintiff has not established any genuine issues of material fact supporting his claim that Defendant improperly applied the UCC Contraband Rule to him.

## III.    CONCLUSION

For the reasons explained above, we **AFFIRM** the decision of the district court.