09-1451-cv
Scott v. Superintendent

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued : March 25, 2010          Decided:  August 2, 2010)

Docket No. 09-1451-cv

-------------------------------------

CHOICE SCOTT,

Plaintiff-Appellant,

- v -

SUPERINTENDENT BRIAN FISCHER, GLENN GOORD, RICHARD DE SIMONE,
AUDREY THOMPSON, JOHN DOES, Nos. 1-10 (members of the New York
State Department of Correctional Services whose names are
presently unknown to plaintiff),

Defendants-Appellees.

-------------------------------------

Before:   SACK, RAGGI, and HALL, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, Judge) granting the defendants' motion to dismiss plaintiff Choice Scott's action brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment.  Scott alleges that the defendants deprived her of liberty without due process of law both by placing her on mandatory post-release supervision without a proper judicial sentence and by failing to take action to remove the supervision before or after she was rearrested for violating the terms thereof.  The district court granted the defendants' motion to dismiss on the ground that all of the

defendants are entitled to qualified immunity. We agree that the defendants are entitled to qualified immunity for all actions they took prior to our decision in Earley v. Murray, 451 F.3d 71 (2d Cir. 2006), and further conclude that the plaintiff has not pleaded sufficient facts to state a claim upon which relief can be granted for any actions the defendants took thereafter.

Affirmed.

ROBERT THOMAS PERRY, Brooklyn, NY, for Plaintiff-Appellant.

LAURA R. JOHNSON, Assistant Solicitor General (Barbara D. Underwood, Richard Dearing, of counsel), for Andrew M. Cuomo, Attorney General of the State of New York, New York, NY, for Defendants-Appellees.

SACK, Circuit Judge:

Shortly before her release from prison, having served all but a few days of her three-year sentence by a New York State court for armed robbery, the plaintiff Choice Scott was informed by the New York Department of Corrections that she would be subject to a five-year period of post-release supervision ("PRS"). PRS had neither been mentioned in her plea agreement nor imposed by a judge, at sentencing or otherwise. It was prescribed administratively, instead, by the Department of Corrections, acting pursuant to N.Y. Penal Law § 70.45, a New York State statute that required that sentences for specified violent felonies be accompanied by a mandatory term of PRS.

This is an appeal from a judgment of the United States District Court for the Southern District of New York (Naomi Reice

2

Buchwald, Judge) granting the defendants' motion to dismiss an action brought by Scott pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment. Scott seeks compensatory and punitive damages for being given a term of PRS that was not imposed by judicial sentence, and for her subsequent arrest and incarceration for non-compliance with the PRS.

The district court granted the defendants' motion to dismiss on the ground that each defendant is entitled to qualified immunity because the right that Scott asserts was violated was not clearly established at the time of the alleged violation.

It is now indeed clearly established that such an administrative imposition of PRS is unconstitutional. The questions presented by this appeal are therefore whether that was so at the time the Department of Corrections defendant-employees administratively imposed PRS on Scott, and whether, following her arrest and re-incarceration for violation of that PRS, Scott has pleaded sufficient facts to set forth a viable claim that the defendants violated clearly established constitutional law by failing to take action to remove her administratively-imposed PRS or to release her from custody. We conclude in the negative as to both questions and therefore affirm.

**BACKGROUND**

On August 6, 1998, the New York State Legislature enacted what is known as "Jenna's Law," N.Y. Penal Law

3

§ 70.45(1). Under the law, certain violent felonies that had thereto fore been punished by the imposition of indeterminate sentences[1] were to be punished with a combination of a determinate sentence and a mandatory term of PRS.[2] Although PRS was mandatory at all times relevant to this appeal, the statute that so provided contained no requirement that a sentencing judge impose the PRS or announce it, at sentencing or otherwise.[3]

Scott pleaded guilty to armed robbery in the second degree on July 12, 1999. In accordance with a plea agreement, she was sentenced to a determinate sentence of three years, with no mention by the sentencing judge at the time of sentencing, either orally or in writing, of a term of PRS. Not until July 1, 2002, a few days prior to her release from prison, did the Department of Corrections inform Scott that she would be subject upon release to a five-year period of PRS.

---

[1] A law enacted in 1995 had abolished indeterminate sentences for certain felony offenses, but did not require PRS. Act of June 10, 1995, ch. 3, 1995 McKinney's N.Y. Laws 107, 108.

[2] The terms and conditions of mandatory PRS can include curfews, travel restrictions, substance-abuse testing and treatment, and placement in residential facilities. People v. Catu, 4 N.Y.3d 242, 245, 825 N.E.2d 1081, 1082, 792 N.Y.S.2d 887, 888 (2005). Violations of PRS can result in re-incarceration for five years or the remaining period of PRS, whichever is less. N.Y. Penal Law § 70.45(1).

[3] Section 70.45(1) was subsequently amended in 2008 to require that a sentencing court "shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision determined pursuant to this article." N.Y. Penal Law § 70.45(1) (2008).

On March 12, 2004, after Scott failed to comply with the terms of her PRS, defendant Thompson, a parole officer, recommended the issuance of a parole violation warrant for her arrest. In October 2006, Scott was arrested in New Jersey pursuant to that warrant, and extradited to New York. Following a parole revocation hearing held on January 16, 2007, Scott was sentenced to an 18-month term of imprisonment for violation of her PRS.

Scott filed a petition for a writ of habeas corpus in state court to challenge her parole revocation. On August 7, 2007, after she had been incarcerated at Rikers Island Correctional Facility for some ten months, the writ was granted. Scott was released shortly thereafter. She then brought the instant action pursuant to 42 U.S.C. § 1983 alleging that her ten-month incarceration for violation of her PRS constituted a deprivation of her liberty in violation of the Due Process Clause of the Fourteenth Amendment. She named as defendants Audrey Thompson, the parole officer who requested the arrest warrant for violation of the PRS; Brian Fischer, then-Commissioner of the New York State Department of Correctional Services ("DOC"); Glenn Goord, the former Commissioner of DOC; Richard de Simone, the Associate Counsel in Charge of the Office of Sentencing Review at DOC; and John Does Nos. 1-10, described as agents, employees, officers and servants of DOC who actively participated in the actions alleged in the complaint. The allegations against defendant Thompson were based on Thompson's procurement of the

5

arrest warrant against Scott, while those against the DOC officials were premised on their role in adopting, approving, or ratifying the policy of administrative imposition of PRS pursuant to which individuals such as Scott were administratively sentenced.

The defendants moved to dismiss the complaint on four grounds: (1) that abstention was appropriate under the Younger, Pullman, and Colorado River abstention doctrines; (2) that Scott failed to exhaust her state remedies, as required by Heck v. Humphrey, 512 U.S. 477 (1994); (3) that Scott's claims were barred by the statute of limitations; and (4) that the defendants were entitled to qualified immunity.

The District Court Decision

The district court rejected the first three of the defendants' arguments. First, the court found abstention inappropriate because, Scott having completed her sentence by the time she filed the complaint, there was no possible State resentencing proceeding from which to abstain. Next, the court rejected the defendants' exhaustion arguments because Scott's conviction had been vacated and the time to resentence had passed, so there were no more actions to be taken in her criminal case. Finally, the court rejected the defendants' statute of limitations argument both because the statute of limitations was tolled under Heck, supra, and because, even if it had not been, the statute of limitations did not begin to run until Scott's PRS was vacated in 2007.

6

The district court nevertheless granted the defendants' motion to dismiss because it concluded that all of the defendants were entitled to qualified immunity. The court based that conclusion on the ground that the law governing administrative imposition of PRS was not clearly established until this Court decided Earley v. Murray, 451 F.3d 71 (2d Cir. 2006), cert. denied, 551 U.S. 1159 (2007), noting that, prior to that time, New York state courts had repeatedly ratified administrative imposition of PRS. The defendants were therefore entitled to qualified immunity for all actions taken prior to the Earley decision.

The district court decided that defendant Thompson was entitled to qualified immunity because the issuance of the parole violation warrant in 2004 occurred before Earley was decided and, even had it occurred afterwards, it would have been reasonable for Thompson to rely on government computer records to determine that Scott was on and had violated the terms of her PRS, and to procure an arrest warrant. According to the court, defendants Fischer, Goord, and de Simone, all then-current or former officials of DOC, were entitled to qualified immunity because the DOC policy of imposing administrative PRS that was applied to Scott was implemented prior to 2002, and therefore prior to Earley, and because Scott had not alleged personal involvement by these defendants in any claimed constitutional violation after Earley was decided.

7

Scott appeals from the district court's judgment with respect to the DOC defendants, although she does not challenge the court's grant of qualified immunity to defendant Thompson. She makes two principal arguments. First, she contends that it was error for the district court to conclude that the administrative imposition of PRS was not clearly established to be unconstitutional until Earley was decided. Rather, Scott argues, the law has been clearly established since the Supreme Court's 1936 decision in Hill v. United States ex rel. Wampler, 298 U.S. 460, 464 (1936), and therefore the defendants are not entitled to qualified immunity with respect to any of the actions alleged in the complaint. In the alternative, she argues that her complaint alleges sufficient personal involvement in the post-Earley period by defendants Fischer, Goord, De Simone, and other high-level DOC officials, that dismissal was inappropriate in any event.[4]

**DISCUSSION**

I.   Standard of Review

We review a district court's grant, on qualified immunity grounds, of a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo, accepting as true all

---

[4]   Neither Scott nor the defendants ask us to review the district court's ruling as to the Younger, Pullman, and Colorado River abstention doctrines, exhaustion of her state remedies, or the application of the statute of limitations. Accordingly, we deem any such arguments waived and do not address those issues further below. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998).

8

material allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff. See Pena v. DePrisco, 432 F.3d 98, 107 (2d Cir. 2005); see also Slayton v. Am. Express Co., 604 F.3d 758, 766 (2d Cir. 2010). We may affirm a district court's dismissal of a complaint on any basis supported by the record. Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 405 (2d Cir. 2006); see also Leecan v. Lopes, 893 F.2d 1434, 1439 (2d Cir. 1990) ("[W]e are free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied."), cert. denied, 496 U.S. 929 (1990).

II. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); accord Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). To determine whether a right is clearly established, we look to (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful. See Shechter v. Comptroller of City of N.Y., 79 F.3d 265, 271 (2d Cir. 1996). Even if this or

9

other circuit courts have not explicitly held a law or course of conduct to be unconstitutional, the unconstitutionality of that law or course of conduct will nonetheless be treated as clearly established if decisions by this or other courts "clearly foreshadow a particular ruling on the issue," Varrone v. Bilotti, 123 F.3d 75, 79 (2d Cir. 1997) (internal quotation marks omitted), even if those decisions come from courts in other circuits, see, e.g., id.; Weber v. Dell, 804 F.2d 796, 801 n.6, 803-04 (2d Cir. 1986) (relying on decisions by seven other circuits finding similar searches unconstitutional, even though this Circuit had not yet reached the issue, in concluding that the defendant was not entitled to immunity), cert. denied, 483 U.S. 1020 (1987).

A. When the Law Governing Administrative PRS Became Clearly Established

1.  "Clearly Established" Law Prior to Earley.  In Earley, we held that if a sentencing court does not explicitly impose a term of PRS on a criminal defendant, it is unconstitutional for DOC subsequently to impose one, irrespective of whether DOC is acting pursuant to a statute that makes such PRS a mandatory part of the sentence of the crime for which that defendant has been convicted.  Earley, 451 F.3d at 76.

Before Earley was decided, New York State courts had routinely upheld the administrative imposition of mandatory PRS under Jenna's Law.  See, e.g., Deal v. Goord, 8 A.D.3d 769, 769-70, 778 N.Y.S.2d 319, 320 (3d Dep't 2004); People v. Crump, 302

10

A.D.2d 901, 902, 753 N.Y.S.2d 793, 793 (4th Dep't 2003); People v. Lindsey, 302 A.D.2d 128, 129, 755 N.Y.S.2d 118, 119 (3d Dep't 2003). The New York Court of Appeals, though, cast some doubt on the practice in its 2005 decision in People v. Catu, 4 N.Y.3d 242, 244-45, 792 N.Y.S.2d 887, 888-89 (2005). There it held that a defendant who was not informed by the court of his PRS obligation at the time of his plea was entitled to have his plea vacated. However, because its decision rested on the constitutional obligation of the courts to inform a defendant of the direct consequences of a plea, of which it held PRS was one, the Catu court did not directly address the question of whether the administrative imposition of PRS was itself unconstitutional.

Scott argues that the law was clearly established, more than 70 years prior to Earley, by the Supreme Court's decision in Hill v. United States ex rel. Wampler, 298 U.S. 460, 464 (1936) (Cardozo, J.). She relies on the Court's observation there that "[t]he only sentence known to law is the sentence or judgment entered upon the records of the court." We are not persuaded.

In Earley, we did indeed rely on Wampler and the quoted passage to decide that administrative sentencing to PRS is unconstitutional. Earley, 451 F.3d at 75-76 & n.1. We said that "[t]he state court's determination that the addition to Earley's sentence by DOCS was permissible is [] contrary to clearly established federal law as determined by the United States Supreme Court." Id. at 76. And in denying a motion for rehearing by the panel, we further noted that "Wampler undeniably

11

stands for the proposition that the only valid terms of a defendant's sentence are the terms imposed by the judge." Earley v. Murray, 462 F.3d 147, 149 (2d Cir. 2006) (denying petition for panel rehearing).

But Earley was a habeas proceeding governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). And "[u]nder AEDPA, an application for a writ of habeas corpus may not be granted unless the state court's adjudication of the claim was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Earley, 451 F.3d at 74 (emphasis added) (quoting 28 U.S.C. § 2254(d)(1)). The conclusion, in the course of such a section 2254 review, that a legal proposition was "clearly established" for purposes of its application by professional state court judges does not require a conclusion that it was "clearly established" in the qualified immunity context, which governs the conduct of government officials who are likely neither lawyers nor legal scholars. See Williams v. Taylor, 529 U.S. 362, 380 n.12 (2000) ("We are not persuaded by the argument that because Congress used the words 'clearly established law' . . . it meant in [AEDPA] to codify an aspect of the the doctrine of executive qualified immunity. . . ."); Walczyk v. Rio, 496 F.3d 139, 154 n.16 (2d Cir. 2006) (noting that "considerations informing limitations on habeas review are sufficiently distinct from those prompting recognition of qualified immunity to preclude easy analogy"); see also

12

McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) ("The question [for qualified immunity purposes] is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct.").

Moreover, Wampler involved the non-judicial imposition of a sentence that was ordinarily reserved to the discretion of the sentencing judge but that the sentencing judge had not in that case imposed, not the imposition of a mandatory term of supervision that was explicitly required by statute. See Earley, 451 F.3d at 74 ("recogniz[ing] differences between the facts of Wampler and those before us [in this case]," viz., that Wampler involved a sentencing decision that was "by law, within the discretion of the sentencing judge"). A reasonable state official could therefore conclude, as did many New York courts in the pre-Earley decisions cited above, that inasmuch as the sentences were mandated by law rather than being in the discretion of the courts to impose, it was not unconstitutional under Wampler to impose such sentences administratively. Cf. Richardson v. Selsky, 5 F.3d 616, 623 (2d Cir. 1993) ("If the district judges in the Southern District of New York, who are charged with ascertaining and applying the law, could not determine the state of the law with reasonable certainty, it seems unwarranted to hold prison officials to a standard that was not even clear to the judges, especially since prescience on the

13

part of prison officials is not required with respect to the future course of constitutional law.").

Jenna's Law made PRS a mandatory part of sentences for specified crimes of violence. See N.Y. Penal Law § 70.45. There is a well-established "general principle that, absent contrary direction, state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." Lemon v. Kurtzman, 411 U.S. 192, 208-09 (1973); accord Vives v. City of N.Y., 405 F.3d 115, 117 (2d Cir. 2005). In the presence of a statute that requires all sentences for certain crimes to be accompanied by mandatory PRS, and New York cases that routinely upheld the administrative imposition of that PRS, we conclude that it was not clearly established for qualified immunity purposes prior to Earley that the administrative imposition of PRS violates the Due Process Clause.

2. "Clearly Established" Law after Earley. Whether Earley itself sufficed clearly to establish the unconstitutionality of administratively imposed PRS for a reasonable New York State correctional official may be open to question inasmuch as two Departments of the New York Appellate Division thereafter continued to find the practice constitutional, conclusions that appear to reflect oversight rather than defiance of Earley. See Garner v. N.Y. State Dep't of Corr. Servs., 39 A.D.3d 1019, 831 N.Y.S.2d 923 (3d Dep't 2007); People v. Thomas, 35 A.D.3d 192, 826 N.Y.S.2d 36 (1st

14

Dep't 2006). It was not until 2008 that the New York Court of Appeals held that administrative imposition of PRS by DOC violated the Due Process Clause. See Garner v. N.Y. State Dep't of Corr. Servs., 10 N.Y.3d 358, 859 N.Y.S.2d 590 (2008); People v. Sparber, 10 N.Y.3d 457, 859 N.Y.S.2d 582 (2008). In circumstances of such apparent judicial confusion as to the constitutional propriety of a statutory mandate, qualified immunity might well continue to shield state officials acting pursuant to that statute. See generally Wilson v. Layne, 526 U.S. 603, 617 (1999) (holding that state officials "cannot have been expected to predict the future course of constitutional law." (internal quotation marks omitted)); see also id. at 618 ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of a controversy."); Vives, 405 F.3d at 118 (refusing to find the law clearly established where "several courts have specifically declined to find [it] unconstitutional").[5]

To resolve this appeal, however, we need not and therefore do not decide precisely when it became clearly established that the administrative imposition of PRS, even when statutorily mandated, is unconstitutional. It suffices for us to

---

[5] It was two months after Garner and Sparber were decided that the New York State Legislature created a statewide statutory "framework" for resentencing or otherwise handling the cases of inmates who had received administrative imposition of PRS, thereby imposing an affirmative duty on the part of government officials to resentence or release such inmates. N.Y. Corr. Law. § 601-d (2008).

conclude, as we do, that the law was not clearly established before our decision in Earley, the period during which PRS was imposed by DOC on Scott.

B. When Defendants' Allegedly Unconstitutional Conduct Took Place

On appeal, Scott advances two separate theories as to when the defendants' allegedly unconstitutional conduct took place, only one of which appears to have been asserted in her complaint. First, she argues that in 2002, four years before Earley, the DOC defendants violated her constitutional rights by taking part in the administrative imposition of her PRS, presumably through their role in the creation or ratification of DOC policies governing PRS. For the reasons we have already rehearsed, because any conduct on the defendants' part that led to the imposition of Scott's PRS occurred some four years before Earley, the law as to the unconstitutionality of such acts was not clearly established when they took place and the defendants are therefore entitled to qualified immunity.

Scott argues further, however, that even after Earley, the DOC defendants violated her constitutional rights (1) by not seeking to remove her PRS or quash her warrant in light of Earley, (2) by revoking her PRS and sentencing her to ten months' incarceration, and (3) by not releasing her while she remained in custody or seeking to have her resentenced in light of Earley.

The only allegation contained in the complaint that addresses the DOC defendants' purportedly unconstitutional actions with respect to Scott's PRS is that they "adopted,

16

approved, and/or ratified the imposition of mandatory [PRS] on individuals such as plaintiff sentenced to determinate terms of imprisonment in New York State courts but not sentenced to mandatory [PRS]." Compl. ¶ 16. This allegation does not appear to include Scott's second, tripartite argument advanced on appeal concerning actions taken after our decision in Earley. Reading the allegation in the complaint liberally, as we are required to do when reviewing the grant of a motion to dismiss, the challenge is directed at the administrative imposition of PRS, not the failure to take action to remove it after it was imposed.

Nevertheless, because we recognize that "[a] supervisory official may be liable [under section 1983 not only] because he or she created a policy or custom under which unconstitutional practices occurred, [but also because he or she] allowed such a policy or custom to continue," Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986), we consider Scott's claims to the extent that she is arguing that the defendants unconstitutionally allowed her administrative PRS to continue after the practice was clearly established to be unconstitutional.

We conclude that the facts pleaded are insufficient to make out such a claim. None of Scott's allegations with respect to the DOC defendants include assertions that affirmative actions taken by these defendants after Earley violated her rights; they refer only to the DOC defendants' failure to act. And Scott has not pleaded facts giving rise to a clearly established

17

affirmative legal obligation on the part of the DOC defendants to take any of the actions that Scott alleges they failed to take. A claim for failure to act is cognizable only in the presence of a corresponding duty to have acted. See, e.g., Benzman v. Whitman, 523 F.3d 119, 132 (2d Cir. 2008) (finding no violation of law where Environmental Protection Agency allegedly failed to consider certain factors pertaining to air quality after the 9/11 attacks because "there is no allegation of any failure to carry out a mandatory duty to take a discrete action required by the [National Contingency Plan]"); cf. Musso v. Hourigan, 836 F.2d 736, 743 (2d Cir. 1988) ("As a general rule, a government official is not liable for failing to prevent another from violating a person's constitutional rights, unless the official is charged with an affirmative duty to act."). In the absence of such an allegation, this claim must fail.

1. Failure to Seek to Remove Scott's PRS or Quash Her Warrant after Earley. Scott asserts in her brief that the DOC defendants violated her due process rights by failing to take action to remove her PRS and quash her warrant after Earley was decided. See, e.g., Appellant's Br. at 19 (noting that "DOC[] did not seek to have any criminal defendants re-sentenced to PRS until July 2008"). Thus the argument seems to be that after Earley was decided but before Scott was arrested by the New York State Division of Parole, DOC should have searched its records for people who had PRS imposed administratively and purged the

18

PRS. But this argument fails because no facts are alleged in the complaint that would support a finding that DOC had the power, through its employees, unilaterally to revoke Scott's PRS despite the conceded fact that DOC had imposed it.

Indeed, it was not until June 2008, some ten months after Scott's release from her parole violation sentence, that the New York State Legislature provided a statutory method by which government officials could seek to resentence or otherwise handle the cases of inmates who had received administrative imposition of PRS, also thereby imposing an affirmative duty on the part of such officials to do so. See N.Y. Corr. Law § 601-d (2008). And Scott herself concedes that "New York law prohibits DOC[] from unilaterally correcting sentences -- even illegal ones." Appellant's Br. at 16 (citing Murray v. Goord, 298 A.D.2d 94, 97, 747 N.Y.S.2d 492 (1st Dep't. 2002)).

Even if there were a basis for a conclusion that DOC officials had the power unilaterally to revoke her PRS, moreover, there is no pleaded basis on which to conclude that DOC would have been obligated under Earley to do so. Scott provides no authority for the proposition asserted on appeal that DOC, as opposed to the District Attorney, the sentencing court, the Division of Parole, or any other state actor with responsibilities with respect to criminal sentencing,[6] had such

---

[6] Earley explicitly recognized the right of the state officials to seek resentencing for persons serving terms of administratively-imposed PRS. Earley, 451 F.3d at 77.

19

an affirmative legal duty at the time, much less a clearly established one.  See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal."); accord Pearson, 129 S.Ct. at 815.

2. Revocation of Scott's PRS.  Scott also asserts, in her brief if not in her complaint, that the DOC defendants violated her constitutional rights in connection with her parole violation hearing after her arrest for non-compliance with her PRS.  But that hearing was conducted entirely by and before the New York State Division of Parole.  See Appellant's Br. at 19 (arguing that DOC "allowed perhaps thousands of criminal defendants, including appellant, to be arrested and re-incarcerated for violating their administratively-imposed PRS").  Scott does not plead facts that, if proven, could establish that the DOC defendants were aware of, let alone participated in, the hearing.[7]  To the contrary, Scott herself asserts that "appellees may not have known of appellant's arrest or participated in appellant's parole revocation hearing."  Appellant's Br. at 25.  This lack of alleged personal involvement or knowledge bars any claim that the DOC defendants can be held liable for what occurred at the hearing.  See McKinnon v. Patterson, 568 F.2d

---

[7] There is no evidence in the record that the DOC defendants had any contact at all with Scott during this period.  Quite to the contrary, it appears that Scott was being held at Riker's Island, a non-DOC facility.

930, 934 (2d Cir. 1977) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983."), cert. denied, 434 U.S. 1087 (1978); accord Colon v. Coughlin, 58 F.3d 865, 873-74 (2d Cir. 1995). To be sure, "[t]he personal involvement of a supervisory defendant may be shown by evidence that: . . . the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom," Colon, 58 F.3d at 873, but the practice of re-incarcerating persons who violated their administratively-imposed PRS was a practice of the Division of Parole, and not of DOC, and was not a practice over which Scott has alleged the DOC defendants had any knowledge or control.

3. Failure To Release Scott from Incarceration or To Move to Have Her Resentenced. Finally, Scott asserts that the DOC defendants violated her Due Process rights by not taking action to release her from custody after she was sentenced to eighteen months' incarceration for violating the terms of her PRS. See, e.g., Appellant's Br. at 26 (arguing that "appellees could have rescinded appellant's administratively-imposed PRS and requested parole officials to issue any necessary release orders"). But there is no allegation of a failure to release or failure to seek resentencing in her complaint,[8] nor indeed does

---

[8] Scott did, however, appear to make an argument to this effect in her opposition to defendants' motion to dismiss. See Appellant's Reply Br. at 8.

21

the complaint assert that the DOC defendants themselves knew whether her PRS had been imposed administratively or judicially. There is nothing in the complaint, then, that would support a conclusion that the defendants were deliberately indifferent to known violations of Scott's rights. See Colon, 58 F.3d at 873-74.

And again, Scott has failed to point to any clearly established affirmative duty on the part of the DOC defendants to make a motion to correct her sentence. Mitchell, 472 U.S. at 526; Pearson, 129 S.Ct. at 815. Under New York law, DOC was not obligated affirmatively to seek resentencing for defendants with administratively-imposed PRS until 2008, when New York Correction Law § 601-d became effective, N.Y. Corr. Law § 601-d(1),(2) (2008), but after Scott's incarceration had ended.

Scott would in any event have had doubtful standing to pursue this claim because of the absence of any pleaded injury-in-fact to her arising from the DOC defendants' failure to act in this regard. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (requiring, as an "irreducible constitutional minimum of standing," that "the plaintiff must have suffered an 'injury in fact'"). If, as Scott has conceded, DOC could not have unilaterally released her from custody after the Administrative Law Judge or the Division of Parole had issued an order revoking her parole, the only injury Scott could be alleging arises from the DOC defendants' failure to make a motion for her release. But Scott herself made that motion -- successfully -- through her

22

habeas petition and was thereupon released.  Her complaint does not allege that she would have been released earlier had DOC made the motion, and, even had such an argument been made, we are skeptical of the viability of an argument that a DOC motion for release in light of Earley would result in an earlier release date than a defendant-initiated motion.  Absent an allegation that the failure to make the motion for her release resulted in increased time spent incarcerated, we fail to understand how injury in fact has been pleaded in this regard.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.