Anthony **LOCANTORE**, Plaintiff,

v.

**Carl B. HUNT**, Superintendent of Groveland Correctional Facility, **Glenn S. Goord**, Commissioner of the State of New York Department of Correctional Services, **Brion D. Travis**, Chairman of the New York State Division of Parole, **John Doe**, member of the Parole Board for the NYS Division of Parole, and **Stephanie Coleman**, New York State Parole Officer, Defendants.

**Case No. 09–CV–5632 KMK.**

United States District Court, S.D. New York.

March 31, 2011.

Gregory Kuczinski, Esq., Kuczinski, Vila, Tarallo, Pillinger & Miller, LLP, Yorktown Heights, NY, for Plaintiff.

Andrew Hodge Meier, Esq., New York State Office of the Attorney General, New York, NY, for Defendants.

## OPINION AND ORDER

KENNETH M. KARAS, District Judge:

Plaintiff Anthony Locantore ("Plaintiff" or "Locantore") brings this case alleging causes of action under 42 U.S.C. §§ 1983, 1985 and 1986, as well as claims for violations of the New York State Constitution and common law negligence. Defendants move to dismiss. For the reasons given below, Defendants' motion is granted.

### I. Background

#### A. Factual Background

For the purposes of this motion, the Court accepts the allegations in the Complaint as true. On or about February 23, 1999, Plaintiff pled guilty in New York State Court "to the crime of Rape" pursuant to a plea agreement between Plaintiff and the State of New York. (Compl. ¶ 22.) At that time, Plaintiff was sentenced to

incarceration for five years, in accordance with the plea agreement. (*Id.* ¶ 23.) Plaintiff alleges that the plea agreement did not contemplate a period of supervised release in addition to Plaintiff's incarceration, that the sentencing judge did not advise Plaintiff that a period of supervised release was required as part of Plaintiff's sentence, that the sentencing judge did not impose a period of supervised release as part of Plaintiff's sentence, that supervised release was not "entered in the Sentence and Commitment Report," and that the State of New York did not advise Plaintiff that post-release supervision would be part of his sentence. (*Id.* ¶¶ 24–29.)

Plaintiff completed his five year term of incarceration on or about October 2, 2003. (*Id.* ¶ 31.) At that time, Plaintiff was incarcerated at Groveland Correctional Facility. (*Id.* ¶ 32.) Plaintiff alleges that, without giving Plaintiff a hearing or the benefit of counsel, Defendants Carl B. Hunt ("Hunt"), then the Superintendent of Groveland, Glenn S. Goord ("Goord"), then the Commissioner of the New York State Department of Correctional Services ("DOC"), Brion D. Travis ("Travis"), then the Chairman of the New York State Division of Parole, and John Doe ("Doe"), a member of the Parole Board of the New York State Division of Parole, imposed upon Plaintiff a five year term of post-release supervision ("PRS"). (*Id.* ¶¶ 7, 10, 13, 17, 33–37.) Plaintiff began serving the period of PRS on or about October 2, 2003. (*Id.* ¶ 38.) [1]

Plaintiff further alleges that on or about November 21, 2003, Plaintiff was re-incarcerated by the New York State Division of Parole for violation of the conditions of his PRS. (*Id.* ¶ 41.) On or about November 1, 2007, while imprisoned for this violation, Plaintiff petitioned the New York state courts for a writ of habeas corpus on the grounds that his incarceration and the imposition of the period of PRS were unlawful. (*Id.* ¶ 42.) On or about March 16, 2008, a justice of the New York Supreme Court granted Plaintiffs petition and ordered him released from incarceration. (*Id.* ¶ 43.) On or about February 24, 2009, Plaintiff was "re-sentenc[ed] ... to his original determinate sentence of five years, which had expired in October, 2003." (*Id.* ¶ 45.)

### B. Procedural Background

Plaintiff filed his Complaint on June 19, 2009. (Dkt. No. 1.) Originally, the Complaint named Stephanie Coleman as a Defendant, but Plaintiff voluntarily dismissed his claims against Ms. Coleman, without prejudice, on March 5, 2010. (Stipulation of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(*l*)(A)(ii) ("Coleman Stip.") (Dkt. No. 16).) The Complaint alleges eleven counts. Unless specified, these counts are alleged against all the Defendants in both their individual and official capacities. (Compl. ¶¶ 9, 11, 13, 17.) Count One seeks relief under 42 U.S.C. § 1983 ("§ 1983") for the imposition of the period of PRS, allegedly in violation of Plaintiffs right to due process under the Fifth and Fourteenth Amendments. (*Id.* ¶¶ 47–50.) Count Two seeks relief under § 1983 for the continued imposition of the period of PRS and for Plaintiffs imprisonment for violation of the conditions of PRS, also allegedly in violation of Plaintiff's due

---

1. "On August 6, 1998, the New York State Legislature enacted what is known as 'Jenna's Law,' N.Y. Penal Law § 70.45(1). Under the law, certain violent felonies that had theretofore been punished by the imposition of indeterminate sentences were to be punished with a combination of a determinate sentence and a mandatory term of PRS [post-release supervision]. Although PRS was mandatory ... the statute that so provided contained no requirement that a sentencing judge impose the PRS or announce it, at sentencing or otherwise." *Scott v. Fischer,* 616 F.3d 100, 103 (2d Cir.2010) (footnotes omitted).

process rights. (*Id.* ¶¶ 51–55.) Count Three seeks relief under § 1983 for deprivation of Plaintiffs right to a jury trial under the Sixth and Fourteenth Amendments due to the alleged post-hoc change to Plaintiff's plea agreement. (*Id.* ¶¶ 56–58.) Count Four seeks relief under § 1983 for deprivation of Plaintiffs right to counsel under the Sixth and Fourteenth Amendments. (*Id.* ¶¶ 59–60.) Count Five seeks relief under § 1983 and 42 U.S.C. § 1985 ("§ 1985") for the imposition of the period of supervised release, again allegedly done in violation of Plaintiff's due process rights. (*Id.* ¶¶ 61–65.) Count Six is alleged against Ms. Coleman only, and so it was dismissed without prejudice as stipulated by Plaintiff. (*Id.* ¶¶ 66–70; Coleman Stip.) Count Seven seeks relief under § 1983 and § 1985 against Travis and Doe for incarcerating Plaintiff for his violation of the terms of his supervised release, allegedly in violation of Plaintiff's due process rights. (Compl. ¶¶ 71–76.) Count Eight is alleged against Ms. Coleman only, and so it was dismissed without prejudice as stipulated by Plaintiff. (*Id.* ¶¶ 77–80; Coleman Stip.) Count Nine seeks relief under Article I, § 6 of the New York Constitution for all the conduct alleged. (Compl. ¶¶ 81–82.) Count Ten seeks relief under Article I, § 2 of the New York Constitution for deprivation of Plaintiff's right to trial by jury. (*Id.* ¶¶ 83–84.) Count Eleven alleges common law negligence based on all the conduct alleged. (*Id.* ¶¶ 85–87.)

## II. Discussion

### A. Standard of Review

 "On a Rule 12(b)(6) motion to dismiss a complaint, the [C]ourt must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero,* 572 F.Supp.2d 463, 466 (S.D.N.Y.2008); *see also Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) ("We review *de*

*novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (internal quotation marks omitted).

 The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (alteration, citation, and internal quotation marks omitted). Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.,* and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, 127 S.Ct. 1955. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2)).

### B. Analysis

#### 1. Statute of Limitations

■■ Defendants argue that Plaintiff's § 1983 claims are barred by the statute of limitations. (Defs.' Mem. of Law in Supp. of their Mot. to Dismiss the Compl. ("Defs.' Mem.") 25.) The statute of limitations applicable to § 1983 actions "is that which the State provides for personal-injury torts." *Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). In New York, the limitations period is three years. *See Shomo v. City of New York,* 579 F.3d 176, 181 (2d Cir.2009) (applying a three-year limitations period to a § 1983 claim); *McKithen v. Brown,* 481 F.3d 89, 100 n. 12 (2d Cir.2007) (" '[T]he statute of limitations applicable to claims brought under § 1983 in New York is three years.' " (alteration omitted) (quoting *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004))). The § 1983 claim "ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.' " *Shomo,* 579 F.3d at 181 (quoting *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994)).

■ Plaintiff argues that his causes of action did not accrue until March 19, 2008, when Plaintiffs petition for habeas corpus was granted. (Mem. of Law ("Pl.'s Mem.") 14.) This position is supported by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489–90, 114 S.Ct. 2364; *see also Amaker v. Weiner,* 179 F.3d 48, 52 (2d Cir.1999) ("[W]here the viability of the plaintiff's claim depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct."). Defendants' arguments in opposition to this firmly established Supreme Court precedent are unavailing. Plaintiffs § 1983 claims are timely.[2]

#### 2. Qualified Immunity

■ Defendants also seek dismissal on grounds of qualified immunity. This doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The question whether a right is "clearly established" requires courts to

---

**2.** Defendants argue that Plaintiff does not challenge the imposition of PRS, merely the means by which is it was imposed, and that, consequently, *Heck* does not apply. (Defs.' Reply Mem. of Law in Further Supp. of their Mot. to Dismiss the Compl. ("Defs.' Reply Mem.") 11.) First, as discussed above, this is an incorrect characterization of the Complaint. Second, even accepting Defendants' characterization of the Complaint, the very case cited by the Defendants supports a con-

clusion that Plaintiff's § 1983 claims are timely. *See Rodriguez v. Fischer,* No. 08–CV–4662, 2010 WL 438421, at *4 (E.D.N.Y. Feb. 3, 2010) (holding that a plaintiff challenging the administrative imposition of a period of post-release supervision "could not have been aware of his injury until April 29, 2008, when the New York Court of Appeals proscribed the practice" and that as the complaint in that case "was filed less than three (3) years later, it [was] not time-barred").

consider "(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer,* 616 F.3d 100, 105 (2d Cir.2010); *see also Safford Unified Sch. Dist. No. 1 v. Redding,* —— U.S. ——, 129 S.Ct. 2633, 2643, 174 L.Ed.2d 354 (2009) ("To be established clearly, however, there is no need that the very action in question have previously been held unlawful." (internal quotation marks and alteration omitted)); *Farid v. Ellen,* 593 F.3d 233, 244 (2d Cir.2010) ("For a right to be clearly established, it 'must have been recognized in a particularized rather than a general sense.'" (quoting *Moore v. Andreno,* 505 F.3d 203, 214 (2d Cir.2007))).

The Second Circuit determined in 2006 that, for the purposes of habeas relief, the New York practice of administratively imposed supervised release—i.e., the very program Plaintiff was subject to—was unconstitutional according to "clearly established Federal law, as determined by the Supreme Court of the United States." *Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006) (internal quotation marks omitted); *see also id.* at 74–76 (citing *Hill v. United States ex rel. Wampler,* 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283 (1936)). In particular, *Earley* held that it violated a defendant's due process rights for DOC to impose a term of PRS where the sentencing court had not explicitly imposed such, even if DOC was acting pursuant to a statutory requirement that made PRS a mandatory part of the sentence of conviction. *Id.* at 75–76 & n. 1.[3]

■ However, "[t]he conclusion, in the course of ... a section 2254 review, that a

legal proposition was 'clearly established' for purposes of its application by professional state court judges does not require a conclusion that it was 'clearly established' in the qualified immunity context." *Scott,* 616 F.3d at 106; *see also Williams v. Taylor,* 529 U.S. 362, 380 n. 12, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of Stevens, J.) ("We are not persuaded by the argument that because Congress used the words 'clearly established law' ... it meant ... to codify an aspect of the doctrine of executive qualified immunity [in the Antiterrorism and Effective Death Penalty Act]...."); *Walczyk v. Rio,* 496 F.3d 139, 154 n. 16 (2d Cir.2007) (noting that "considerations informing limitations on habeas review are sufficiently distinct from those prompting recognition of qualified immunity to preclude easy analogy"). The *Scott* court declined to answer the question of exactly when the unlawfulness of New York's practice of administratively imposed supervised release became clearly established for the purposes of qualified immunity. *See Scott,* 616 F.3d at 107 (noting that even after *Earley,* two Departments of New York's Appellate Division upheld the administrative imposition of PRS and that it was not until 2008 that the New York Court of Appeals held, in *Garner v. New York State Department of Correctional Services,* 10 N.Y.3d 358, 859 N.Y.S.2d 590, 889 N.E.2d 467 (2008) and *People v. Sparber,* 10 N.Y.3d 457, 859 N.Y.S.2d 582, 889 N.E.2d 459 (2008), that this practice violated the Due Process Clause). But, the court explicitly held that whenever that exact date may be, it was not before the Second Circuit's decision in *Earley. See id.* at 108.

■ *Earley* was decided on June 9, 2006. It follows that all Defendants have qualified immunity for all actions they took

---

**3.** Before *Earley,* New York state courts had regularly upheld the imposition of PRS by

DOC. *See Scott,* 616 F.3d at 106 (collecting cases).

before that date. This includes the administrative imposition by DOC officials of the PRS in October 2003 and the incarceration of Plaintiff by parole officials in November 2003. *See id.* at 107 ("A reasonable state official could ... conclude, as did many New York courts in the pre-*Earley* decisions cited above, that inasmuch as the sentences were mandated by law rather than being in the discretion of the courts to impose, it was not unconstitutional under *Wampler* to impose such sentences administratively."); *Trice v. New York,* No. 08–CV–652, 2010 WL 5391551, at *3 (N.D.N.Y. Dec. 21, 2010) (applying *Scott* to find pre-*Earley* conduct protected by qualified immunity).[4]

That Defendants' conduct prior to *Earley* is covered by qualified immunity is fatal to Plaintiffs case, for the only post-*Earley* event alleged in the Complaint is that Plaintiff continued to be incarcerated until his habeas petition was granted in March 2008. (Compl. ¶¶ 41–43.) This is so for several reasons. First, the overwhelming consensus within the Second Circuit is that the protection of qualified immunity applied until April 2008, when the New York Court of Appeals resolved a split among the lower state courts and invalidated the administrative imposition of PRS. *See Robinson v. Fischer,* No. 09–

CV–8882, 2010 WL 5376204, at *8 (S.D.N.Y. Dec. 29, 2010) (collecting cases). Until then, the courts have uniformly held, it would have been reasonable for Parole and DOC officials not to have understood fully the constitutional problems created by imposition of PRS in such a manner. *See, e.g., Hardy v. Fischer,* No. 08–CV–2460, 2010 WL 4359229, at *3 (S.D.N.Y. Nov. 3, 2010) ("[T]his Court now finds that the unlawfulness of administratively imposed PRS was not clearly established from the standpoint of a reasonable DOCS officer in the period after *Earley* and before the New York Court of Appeals' decisions in *Garner* and *Sparber.*"); *Williams v. Fischer,* No. 08–CV–4612, 2010 WL 3924688, at *5 (E.D.N.Y. Sept. 30, 2010) ("In light of the 'judicial confusion' to which the Second Circuit alluded in *Scott,* this court holds that during the period between *Earley* and the *Sparber/Garner* decisions, it was *not* clearly established that administrative imposition of PRS is unconstitutional."). Here, there cannot be a claim that any Defendant committed a wrong after April 2008, when they arguably would lose the shield of qualified immunity, as Plaintiff prevailed in his habeas petition in March 2008. Thus, all Defendants are protected by qualified immunity.[5]

---

4. Because it was not clearly established for qualified immunity purposes that to impose PRS administratively was unlawful prior to *Earley,* it must follow that it was also not clearly established that it was unlawful to do so without giving Plaintiff the "benefit of counsel." (Compl. ¶ 37; *see also* ¶¶ 59–61 (asserting deprivation of Plaintiff's right to counsel under the Sixth and Fourteenth Amendments).)

5. At least one court has determined that qualified immunity protection extends until June 30, 2008, as that is when the New York State legislature passed Correction Law § 601–d, which imposed on DOC officials a duty to "notify sentencing courts that PRS had not been properly imposed in certain cases ...

and to have these defendants returned to the original sentencing courts for modification of their sentences." *Albergottie v. New York City,* No. 08–CV–8331, 2011 WL 519296, at *6 (S.D.N.Y. Feb. 15, 2011) (internal quotation marks omitted). In part, this conclusion is based on the fact that the New York Court of Appeals had noted that the administrative imposition of PRS was "only ... a procedural error, akin to a misstatement or clerical error, which the sentencing court could easily remedy." *Sparber,* 859 N.Y.S.2d 582, 889 N.E.2d at 466. According to this view, it was not until the legislature acted, in the aftermath of *Garner* and *Sparber,* that government officials had an "affirmative duty" to "resentence or release such inmates." *Scott,* 616 F.3d at 108 n. 5.

Second, even if qualified immunity did not protect post-*Earley* conduct, Plaintiff has made no allegation that any *affirmative* acts taken by Defendants during that time violated his rights. Instead, at best, it could be inferred that Plaintiff is basing a claim of constitutional fault on a *failure* to act—in this case, a failure to release him from imprisonment, particularly after *Earley*. Yet, this claim necessarily requires, as the Second Circuit noted in *Scott*, that DOC and Parole officials had an "affirmative legal obligation" to take the actions Plaintiff claims they did not take. 616 F.3d at 109. Put simply, "[a] claim for failure to act is cognizable only in the presence of a corresponding duty to have acted." *Id.* Yet, Plaintiff fails to establish what legal duty Defendants had to act before his habeas petition was granted. Indeed, as noted, it was not until June 2008, three months after Plaintiff was released from prison, that the New York legislature "provided a statutory method by which government officials could seek to resentence or otherwise handle the cases of inmates who had received administrative imposition of PRS." *Id.* Because Plaintiff has not alleged that DOC or Parole officials had the legal authority to correct illegal sentences unilaterally, and the *Scott* court has indicated that they did not, then the alleged failure of these agencies (and the Defendants sued here) to do so is not actionable. *See id.* at 109–10. The same is true for any claim that DOC and Parole officials erred by not simply releasing Plaintiff from prison. *See id.* at 110–11 (noting that plaintiff there failed to establish such a duty). Accordingly, Plaintiff has failed to state a claim for any conduct by Defendants before his release from prison in March 2008.

Third, Plaintiff fails to allege any personal involvement of the remaining Defendants for Plaintiffs continued incarceration after *Earley*. Instead, Plaintiff only broadly claims that he was incarcerated by the New York State Division of Parole on or about November 21, 2003 (Compl. ¶ 41), and that in November 2007, while imprisoned, he filed the habeas petition that ultimately was granted, (*id.* ¶¶ 41–42). Plaintiff alleges not a single fact explaining what role the moving Defendants had in his continued incarceration after *Earley*, Indeed, Plaintiff does not even allege that these individuals held the positions alleged in the Complaint after *Earley*.[6] Such an omission itself is grounds to dismiss the claims against these Defendants. *See Robinson*, 2010 WL 5376204, at *9 (holding that absence of evidence that individual defendants were responsible for notifying sentencing judge of need to re-sentence plaintiff in light of changes to PRS procedures absolved them of culpability); *Williams*, 2010 WL 3924688, at *2 (dismissing claims against defendants who were not in positions of authority such that they would have been able to affect plaintiff's PRS status).[7] The Court must therefore dismiss all of the federal constitutional claims against the Defendants on the ground that the Defendants are protected by qualified immunity.

### 3. State Law Claims

In addition to federal constitutional claims, the Complaint contains claims arising under New York state law. (Compl. ¶¶ 81–87.) Having dismissed all of Plain-

---

**6.** The Court notes that at least one other court has observed that Defendant Goord was Commissioner of DOC from 1996 until August 2006. *See Williams*, 2010 WL 3924688, at *2.

**7.** Finally, Plaintiff concedes that he may not sue the Defendants in their official capacities for damages under § 1983. (Pl.'s Mem. 15.) *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, Plaintiffs claims against Defendants in their official capacities must also be dismissed.

tiffs federal claims, the Court must determine whether to exercise supplemental jurisdiction over these state law claims.

 "The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) (citations and internal quotation marks omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

The Court finds that nothing distinguishes this case from "the usual case." Plaintiff's federal claims are all dismissed prior to trial, and there is no reason to believe that judicial economy, convenience, or fairness would be served by this Court exercising supplemental jurisdiction over Plaintiff's state law claims, and to do so would be inconsistent with the principle of comity. Thus, Plaintiff's putative state constitutional and negligence claims are dismissed without prejudice to refiling in state court.

### III. Conclusion

Defendants' motion to dismiss is granted as to Plaintiff's Federal claims. Plaintiff's state law claims are dismissed without prejudice to refiling in state court. The Clerk of the Court is respectfully requested to terminate the relevant motion (Dkt. No. 9), and close this case.

SO ORDERED.